UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA,
    Plaintiff,

v.

DAVID CRISOSTOMI,
    Defendant.

CR. NO. 12-166-M

## ORDER

This Court sentenced David Crisostomi on January 29, 2014, after he pled guilty to a five-count indictment concerning the production, distribution, and possession of child pornography. This Court, with the consent of the parties, left open the question of restitution because at the time of the sentencing a case dealing directly with the issue of the calculation of restitution to the victims in child-pornography cases was pending in the United States Supreme Court. On April 23, 2014 the U.S. Supreme Court issued its opinion in *Paroline v. United States*, 134 S. Ct. 1710 (2014). This Court now applies the guidance of *Paroline* to Mr. Crisostomi's case.

Mr. Crisostomi pled guilty to possessing and distributing child pornography, including "1436 known image files and 88 known series [of] identified victims," including the so-called "Vicky" and "Cindy" series. (ECF No. 37 at 10-11.) Attorneys for both "Vicky" and "Cindy" seek restitution under 18 U.S.C. § 2259. (ECF No. 37-1.) "Enacted as a component of the Violence Against Women Act of 1994, § 2259 requires district courts to award restitution for certain federal criminal offenses, including child-pornography possession." *Paroline*, 134 S. Ct. at 1716. "Vicky" submitted a restitution request documenting damages of $1,335,369.60 and stated that $713,675.00 remained unpaid (53%) and requesting restitution of $10,000 from

Mr. Crisostomi. (ECF No. 61 at 5.) "Cindy" submitted a restitution request documenting damages of $1,289,450 but did not submit a requested amount. *Id.*

The U.S. Supreme Court's *Paroline* decision sets forth a framework for determining cause and cause-in-fact in child-pornography cases. *Paroline*, 134 S. Ct. at 1728. Causation is relatively straightforward: "the victim's costs of treatment and lost income resulting from the trauma of knowing that images of her abuse are being viewed over and over are direct and foreseeable results of child-pornography crimes." *Id.* at 1722. Causation-in-fact regarding a particular defendant is a much more nuanced and complicated determination:

> where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses. The amount [should] not be severe . . . [nor] be a token or nominal amount. The required restitution [should] be a reasonable and circumscribed award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role.

*Id.* at 1727.

It falls on the district court to determine the "proper amount of restitution." *Id.* In general, "[i]t is well recognized that district courts by necessity 'exercise . . . discretion in fashioning a restitution order'" and in that determination "a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." *Id.* at 1727-28 (quoting 18 U.S.C. § 3664(a)(2002)). Because of the unique nature of restitution in child pornography cases, the

U.S. Supreme Court also set out "a variety of factors district courts might consider in determining a proper amount of restitution" including:

> [1] the *number* of past criminal defendants found to have contributed to the victim's general losses; [2] *reasonable predictions* of the number of future offenders *likely* to be *caught and convicted* for crimes contributing to the victim's general losses; [3] any *available* and *reasonably reliable estimate* of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); [4] whether the defendant reproduced or distributed images of the victim; [5] whether the defendant had any connection to the initial production of the images; [6] how many images of the victim the defendant possessed; and [7] other facts relevant to the defendant's relative causal role.

*Id.* at 1728 (emphases added). The U.S. Supreme Court went on to caution that "[r]estitution orders should represent an 'application of law' not a 'decisionmaker's caprice,'" and the approach articulated above involves discretion and estimation." *Id.* at 1729 (quoting *Philip Morris USA v. Williams,* 549 U.S. 346, 352 (2007) (internal quotation marks omitted)).

Finally, the U.S. Supreme Court stressed that "courts can only do their best to apply the statute as written in a workable manner, faithful to the competing principles at stake: that victims should be compensated and that defendants should be held to account for the impact of their conduct on those victims." *Id.* The U.S. Supreme Court continued, stating that "defendants should be made liable for the consequences and gravity of their own conduct, not the conduct of others" and the government "bears the burden of demonstrating the amount of the loss sustained by [the] victim." *Id.*; 18 U.S.C. § 3664(e)(2002).

For each of the victims, there are well-documented past and future medical and legal needs that can be considered for restitution. Nevertheless, even with the factors provided by the U.S. Supreme Court, this Court has struggled in determining the proper level of restitution from Mr. Crisostomi. In this Court's opinion, while some of the *Paroline* factors are determinable

3

with some precision, a number of other factors are virtually unknown and unknowable, regardless of the detail available in the record. For example, how is a district judge to make a "reliable estimate of the broader number of offenses involved" when even the U.S. Supreme Court admits parenthetically that "most of whom will, of course, never be caught, or convicted?" *Paroline*, 134 S. Ct. at 1728. It appears to this Court that some of the factors the Supreme Court suggests be considered are at best difficult, and at worst impossible to calculate in this case as in most similar cases. The Court is not entirely comfortable making such calculations in this or similar situations but believes it compelled to do so by the U.S. Supreme Court opinion in *Paroline*.

Mr. Crisostomi has pled guilty to three counts of production of child pornography, one count of distribution of child pornography, and one count of possession of child pornography. (ECF No. 48 at 1.) It is undisputed that he possessed images of both "Vicky" and "Cindy" and he was not involved in the initial production of either set of images; however, it is unclear if he reproduced or distributed either series of images. He possessed forty-nine images and three videos of "Vicky" and two images of "Cindy," amongst hundreds of other photos, and for those offenses, this court "shall order restitution." 18 U.S.C. § 2259(a); (ECF No. 61 at 5).

In its best attempt to weigh as many of the *Paroline* factors as possible, this Court makes the following findings based on the record submitted to the Court. About 500 people have been found, convicted, and ordered to provide restitution for "Vicky's" general damages.[1] (ECF No. 61-1.) This Court will make a reasonable assumption that the number of people caught,

---

[1] The government has provided data compiled by the Department of Justice's Child Exploitation and Obscenity Section, but notes, "this list is largely comprised of data self-reported by Assistant United States Attorneys and CEOS Trial Attorneys. It only includes restitution awards in federal criminal cases prosecuted in the United States, and likely is an under representation of even that subset of cases. It does not include state prosecutions or cases elsewhere in the world." (ECF No. 61 at 4-5.)

4

convicted, and ordered to contribute to the payment of her damages, could double to an additional 1000 offenders. Therefore, this Court, applying the *Paroline* factors, finds it reasonable to assign as Mr. Crisostomi's restitution 1/1000 (0.1%) of "Vicky's" remaining damages of $713,675. Therefore, this Court orders the payment of restitution from Mr. Crisostomi to "Vicky" of $713.68.

While a similar figure for "Cindy's" remaining damage amount is not available to this Court, it is reasonable for this Court to apply a proportional assessment. Accordingly, this Court estimates that 53% of "Cindy's" total damages remain unpaid ($1,289,450 times 53% equals $683,408.50) and again assumes there could be 1000 additional offenders who will be caught, convicted, and could contribute to the payment of her damages. Therefore, this Court finds it reasonable to assign as Mr. Crisostomi's restitution 1/1000 (0.1%) of "Cindy's" estimated remaining damages of $683,408. Therefore, this Court orders the payment of restitution from Mr. Crisostomi to "Cindy" of $683.41.

In the end, taking into account all of the *Paroline* factors that can be determined, and ensuring that Mr. Crisostomi is made "liable for the consequences and gravity of [his] own conduct" and aware that his "conduct produces concrete and devastating harms for real, identifiable victims," the restitution amounts granted here are neither "severe" nor a "token or nominal amount" and will aid in the continuing process of compensating the victims for their damages that resulted from this crime. *Paroline*, 134 S. Ct. at 1727, 1729.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge
July 16, 2014

5